GARÇON DESSAUNIER *et al.*, Appellants, *v.* THORNTON D. MURPHY, Respondent.

*Limitations—Disabilities.*—Where a defendant shows himself to have been in adverse possession of the premises for the time limited by the statute, the burden of proof is upon the plaintiffs to show affirmatively that they were under the disabilities described in the statute. Disabilities cannot be cumulated one upon another.

### Appeal from St. Louis Land Court.

This suit was filed on the 14th day of September, 1853, and is for the recovery of two-fifteenths of 120 arpens in the Grand Prairie common field. The land was granted to William Bizette in 1769, by his estate sold to Charles Bizette in 1775, and was confirmed by the act of 29th April, 1816, to William Bizette or his legal representatives, and duly sur-

veyed as No. 1589. The case has been in the Supreme Court twice before this appeal, reported in 22 Mo. 95, and 27 Mo. 48. Charles Bizette died on the land in 1780, leaving his widow, Marie Christine, and three children, Antoine, Paul, and Mary. The widow married John B. Provenchere in 1781; she died in 1819. Mary, the daughter, married Louis Boissy in 1795; she died in 1813, leaving five children, Emily, Margaret, Louise, Louis, and John B. Emily married John B. Gagnon 22d June, 1818; he died in 1834; she afterwards married Dessaunier. Margaret married Paschal Mallet in 1812; she died in 1834; he died between 1844 and 1849; the plaintiffs (Mallets) are the only children living. Paul and Antoine conveyed their interests, each one-third, to John L. Provenchere in 1817; Provenchere conveyed the same to Langham the same year; Langham, by sheriff, conveyed the tract to the United States in 1827; Brown Cozzens acquired it of the United States October 15, 1831.

Louis B. Boissy, Jr., conveyed his interest, one-fifteenth, to Brown Cozzens January 1st, 1833; John B. Boissy conveyed his interest, one-fifteenth, to John L. Provenchere August 20, 1833, which enured to Cozzens.

Cozzens and wife conveyed to Edward Bates, trustee for Mrs. Cozzens, in 1834, (having all the title but three-fifteenths); Edward Bates, trustee, conveyed to Abbot in 1836; Abbot and wife and Joseph Tabor conveyed to the defendant in 1838. The interest of Louise Boissy was barred by the statute of limitations, one-fifteenth, and suit dismissed as to her.

The foregoing facts are shown by evidence on both sides. The defendant's answer admits possession, traverses all other allegations, asserts ownership in himself, and sets up the statute of limitations.

Defendant introduced in evidence, against the objections to plaintiffs, archive No. 2371, dated August 18, 1781, and archive No. 2590, dated September 17, 1781; the first an inventory, the second a sale of Charles Bizette's estate: the inventory included this land—the sale did not.

Then a deed from John B. Provenchere and Marie, his wife, of date May 4th, 1811, reciting " the same Brazeau " purchased at public sale of Charles Bizette, as evidenced by " the receipt annexed " :

" I, the undersigned, give a full discharge of Joseph Bra- " zeau of the sum which he owes to the estate of the late " Vizet for a piece of land which was sold to him at public " sale.   St. Louis of Illinois, October 12, 1782.   200 livres or " $40.   Mark of × Provenchere."

No original receipt was shown, but simply what was recited in the deed; the consideration of the deed was $40; plaintiffs objected to its being read; then a deed from Joseph Brazeau to A. & L. Brazeau, of same date, for same land; and a deed from A. & L. Brazeau to Langham for a tract adjoining, reciting Langham on the north, of the date August 13, 1818.

Brown Cozzens was in possession in 1829, claiming to be owner, and the possession was continued down to the present time.

Defendant then read a portion of the testimony of Cecil Lecompte, contained in former bills of exceptions in this case.

The defendant then read portions from a deposition of Cecil Lecompte, taken by the plaintiffs and filed in said case, to which plaintiffs objected unless the whole was read; its admission was excepted to.

Plaintiffs then offered to read the whole deposition—objections to which were sustained and exceptions taken.

Plaintiffs then offered the following instructions, which were given :

1. The possession of the defendant and those under whom he claims, in order to defeat the rights of the plaintiffs, must have been a continuous possession adverse to the rights and title of the plaintiffs for a period of twenty years anterior to the commencement of this suit; and if, at the time of such adverse possession taken by the defendant and those under whom he claims, the plaintiffs or those under whom they claim were married, the said term of twenty years does not begin to run until the termination of said marriage.

2. The land in dispute was confirmed by the act of Congress of April 19, 1816, to be surveyed to the legal representatives of William Bizette, and if the jury believe from the evidence that said land was purchased by Charles Bizette in 1775, and that Charles Bizette died in 1780, leaving three children his heirs, and that Louis Boissy married one of the said children, a daughter of said Charles Bizette, named Marie, and that the said Boissy and wife died, leaving only five children heirs of the said Marie Boissy, and that Emily Dessaunier, one of the plaintiffs, was a child of the said Louis and Marie Boissy by said marriage, and that Paschal Mallet, Louis Mallet, Francis Mallet, Charles Mallet, and Millia Mallet, the other plaintiffs, are the children and heirs of Margaret Boissy, one of the said children and heirs of the said Louis and Marie Boissy, and Paschal Mallet was her husband, and that said Margaret and her husband died before the commencement of this suit, then the jury will find for the plaintiffs for eleven one hundred and eightieths of the land sued for, unless the plaintiffs are barred by the statute of limitations.

Plaintiffs then offered the following instructions, which were refused :

1. If the jury believe that Langham went into possession of the land in dispute in 1818, under title derived simply from Paul and Antoine Bizette, two of the heirs of Charles Bizette and of Louis Boissy, Sen., who had only a life estate, then the said Langham was tenant in common with the remaining heirs, and his possession was rightful and not adverse to his said co-tenants, the plaintiffs. Until some act or declaration of him, the said Langham, amounting to an ouster, or demand of title, no act of limitation, as to the plaintiffs, would begin to run.

2. Unless the jury believe that possession was taken and long held under the pretended sale of the land in controversy to Joseph Brazeau, the jury are not at liberty to find any authorized sale of said land to the said Joseph Brazeau ; and the jury are further instructed that there is no evidence of

any such possession under said Brazeau.   In the absence of any such authorized sale the plaintiffs are entitled to recover, unless the defendant is protected by the statute of limitations.

Defendant offered the following instructions, which were given and excepted to :

(For instructions A, B, C, see the opinion.)

D. If the jury believe from the evidence that John Provenchere and Marie Christine Provenchere made to Joseph Brazeau a deed of conveyance of the terms of the writing read in evidence by the defendant, as a copy of such deed, and that the said Marie was the widow of Charles Bizette, and that such deed embraced this land ; then, if the jury find in favor of Emily Dessaunier, they should find for her only one-thirtieth of the land sued for, and if they find in favor of the other plaintiffs they should find for them altogether only one-thirtieth of the land sued for.

*Morehead* and *Strong*, for appellants.

I. The deed from Provenchère and wife to Brazeau in 1811, and the inventory and sale of Charles Bizette's estate, were all improperly admitted in evidence.   Presumption of title was no longer a question in the case.

The case was narrowed down to the question of the statute of limitations.   (27 Mo. 48.)

II. The court improperly allowed the defendant to read selected portions from the deposition of Cecil Lecompte.

III. It was improper not to have allowed the plaintiffs to read the whole deposition, not only after what had been done, but at any time.   (6 Pa. State Rep. 179 ; 21 Mo. 300 ; 1 Greenl. Ev. § 201 & 202 ; 28 Mo. 323, on page 329.)

IV. The plaintiffs' last three instructions were improperly refused.

The first was the law, and the facts authorized it, although disability was clearly shown without it.   The plaintiffs were protected without disability under the law in that instruction.

The evidence showed that Langham or the defendant had no title but that derived from plaintiffs' co-heirs, although

the possession of the defendant did not commence, as the evidence in this case shows, till 1829.

Cozzens purchased from Louis Boissy, Jr., one of the heirs, in 1833; not upon the principle, we conceive, of buying his peace, but of increasing his interest. He must have regarded Louis Boissy as a co-tenant before his purchase. (30 Mo. 272.)

V. Defendant's first instruction is wholly wrong; it cuts off all the plaintiffs' rights in the case, unless under age or married. This brings up an important question the jury were prevented from seeing by the instruction. Mrs. Mallet died in 1834. We suppose this fact is undoubtedly established by the evidence. Mr. Barada saw her in Carondelet in 1831; she was certainly alive then. Her husband died between 1844 and 1849; he had a life estate. The plaintiffs, Mallets, could not sue till his death; they were their children; they were unquestionably under disability, and entitled to recover in this case. They were prevented from doing so by this instruction. (17 Mo. 231; 23 Mo. 112; 25 Mo. 350; 22 Mo. 52 & 54.)

Again, the answer asserts title in fee in the defendant. The burden of proof, we apprehend, on this point is on the defendant.

The first deed he begins with is 1834; twenty years does not elapse till 1854; suit was brought in 1853.

*A. Todd,* for respondent.

I. The plaintiffs claimed to recover only a portion, either by their evidence or by their instructions. The court so instructed the jury as to give them a portion, and the very portion the plaintiffs asked for in their instruction given, unless barred by the statute of limitations. The court refused the defendant's instruction that denied the plaintiffs any recovery except those founded upon the statute of limitations. Hence, so far as defendant's defence was suffered by the court to go to the jury, it was solely that under the statute of limitations; so that the court instructed the jury to find for the plaintiffs a portion unless they found them barred un-

der the statute of limitations. Therefore, as the jury found for the defendant, they necessarily found upon the question of the bar by possession and upon no other.

There is no evidence that Langham did take possession under said deed, or take possession at all. If there were, there is no evidence that Brown Cozzens, under whom defendant claims, took possession under Langham. The evidence is that he, Cozzens, took possession as early as 1829, but under whom or how does not appear. It only appears that he took possession for himself, and defendant claimed under him.

II. The evidence was ample that the defendant and those under whom he claimed had had an adverse possession continuously, and as against all others, for more than twenty years next before this suit was begun, and beginning as early as 1829.

To avoid the effect of this, the plaintiffs attempted to prove disabilities, and as these, if any, were exceptions to the operation of the statute, the burden of proof was upon the plaintiffs to show this affirmatively and satisfactorily to the jury.

III. The ruling of the court with reference to the admission of portions of Mrs. Lecompte's deposition, taken in 1856, at the instance of the defendant, and the exclusion of the rest of it when offered by plaintiffs, was proper.

BATES, Judge, delivered the opinion of the court.

When this case was here before, the defendant claimed a presumed title under Brazeau. That claim is now abandoned, and the case now presented is as follows:

The land was confirmed to Bizette's representatives. It was originally conceded to William Bizette, and in 1775, after the death of William Bizette, it was judicially sold to Charles Bizette, who died leaving three children. One of those children, Marie Louise, married Louis Boissy and died in 1813, leaving five children, of whom Emily and Margaret were two. The plaintiffs claim to be the representatives of these two, and as such claim an undivided interest in the land. Emily first married John B. Gagnon, who died about 1834, and she

then married Dessaunier. Margaret married Paschal Mallet; she died about 1834, and her husband some ten years afterward.

Defendant showed possession of the land since about 1829. The possession was commenced by Brown Cozzens, under whom defendant claimed.

The plaintiffs showed that in 1833 Louis Boissy conveyed his interest to Brown Cozzens. The plaintiffs also showed conveyances by some of the other descendants of Charles Bizette to Provenchere, and by Provenchere to Augus. L. Langham, but did not connect Langham's title (or possession, if he had any) with Brown Cozzens' title or possession, or with the defendant's, who claims under Brown Cozzens.

The plaintiffs showed that when Cozzens took possession of the land, their ancestors, Emily Boissy (then wife of Gagnon) and Margaret Boissy, wife of Mallet, were married women.

The precise times of the death of Gagnon, husband of Emily, and of Margaret, wife of Mallet, were not definitely shown by the evidence, though they occurred about twenty years before the suit was brought.

For the defendant the court instructed the jury as follows:

A. If the jury believe from the evidence that the defendant, and those through whom he obtained possession of the property sued for, had had a continuous possession thereof for twenty years next before the commencement of this suit, claiming the same as their own, then they should find for the defendant as against each of the plaintiffs who has not proved herself or himself either under twenty-one years of age, or a married woman, at the commencement of such possession; and the burden of proof is upon each of the plaintiffs claiming to have been under such age, or a married woman at the commencement of such possession, to prove it affirmatively; and until it be proved to the satisfaction of the jury, the contrary thereof should be presumed by the jury.

B. If the jury believe from the evidence that the defendant, and those through whom he obtained possession of the land sued for, had had such a length of possession thereof next

before the commencement of this suit, as described in instruction marked A, claiming the same as their own, after the plaintiff Emily Dessaunier was of the age of at least twenty-one years and unmarried, they should find for the defendant as to her.

C. If the jury believe from the evidence that the defendant, and those through whom he obtained possession of the land sued for, had had such a length of such a possession thereof next before the commencement of this suit, as described in instruction marked A, claiming the same as their own, after Margaret Mallet, mother of the plaintiffs named Mallet, was of the age of at least twenty-one years and unmarried, and that neither she nor her husband was ever in possession of said land, and that the same at and before her death was in possession of others claiming the same as their own, then they should find for the defendant.

And the court, at the instance of the plaintiffs, instructed the jury, that "if at the time of such adverse possession taken by defendant, and those under whom he claims, the plaintiffs, or those under whom they claim, were married, the said term of twenty years does not begin to run until the termination of said marriage."

These instructions properly state to the jury the law applicable to the facts of this case. The disabilities set up by the plaintiffs were that Emily and Margaret were, when Cozzens took possession of the land, married women. Those disabilities ceased when they ceased to be married women, and no other disabilities could be tacked to or cumulated upon these. As to the plaintiff Emily, when her husband Gagnon died, the statute of limitations began immediately to run against her and never afterward ceased. As to Margaret, immediately upon her death the statute began to run against her representatives, without regard to any disabilities under which they might be, for this would be in effect a cumulation of disabilities. So holding, it is unnecessary for us to determine whether the husband of Margaret Mallet had a life estate as tenant by the curtesy in the case stated in instruc-

tion ○ of their lack of possession during their marriage, and the fact of an actual adverse possession.

Whether with these instructions the jury was justified by the evidence in finding for the defendant, we do not inquire further than to see that there was some evidence to authorize the verdict, as there was in this case.

The verdict being for the defendant, it is not necessary to notice the instructions in reference to the amount of interest in the plaintiffs if they should recover at all.

The first instruction refused the plaintiffs was properly refused, because no connection is shown between the defendant and Langham.

The second was also properly refused, because the court had, by refusing the defendant's instruction on that subject, declined to give any effect to the Brazeau title, and in fact it was withdrawn from the consideration of the jury. If the matter was still considered as before the jury, however, that instruction, as prayed, was not proper, because it called upon the court to declare that, in the absence of a sale to Brazeau, the plaintiffs were entitled to recover, which the court could not do without assuming facts proper for the jury to decide.

This case had been tried twice before—once in 1854 and once in 1857. Cecile Lecompte, a witness for the plaintiffs, (who at the time of this trial was dead,) had testified at each of the previous trials, and her testimony had been preserved in the bills of exceptions. Her deposition had also been taken by the plaintiffs in 1856, and filed in the cause.

At this trial the plaintiffs read to the jury from the bill of exceptions her testimony given at the trial of 1854. The defendant then read to the jury from the bill of exceptions selected portions of her testimony given at the trial in 1857, and selected portions of her deposition. The plaintiffs objected to these portions being read, unless her whole testimony was read; their objections were overruled, and they then offered to read the whole themselves. The defendant objected to their reading it, except as to such portions as were

of the same subject he had read of, and his objection was sustained.

We cannot see how the plaintiffs are injured in this matter. If Madame Lecompte had been alive, and had testified for the plaintiffs, she could have been called by the defendant to testify upon a particular subject, without his being required to examine her on other subjects, and the plaintiffs would not have acquired any right to examine her in rebuttal on other subjects. Her death had not changed the rights of the parties as to her testimony. The plaintiffs had her testimony taken at three different times, and no doubt selected to read to the jury that which they thought most favorable to themselves; and if her testimony, taken at other times, included additional matter, they could have read that also; but the matter excluded by the court was no new matter, being a mere repetition of her testimony read to the jury.

Judgment affirmed; the other judges concur.

NOTE.—Brown Cozzens entered in 1829, Mrs. Mallet being then a married woman and under disability. She died in 1834, leaving her husband living and children. By the statute of 1825, p. 511, § 3, the heirs of a person dying under a disability are entitled to the same benefits that such person would have had by living until their disabilities should have ceased or been removed. Had Mrs. Mallet lived and survived her husband, she would had twenty years after her discoverture within which to sue. (Reaume v. Chambers, 22 Mo. 36.) *Quere*—Have not her heirs twenty years after Mr. Mallet's death within which to sue?